******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# IN RE PROBATE APPEAL OF JEAN SHARP
## (AC 48605)

Cradle, C. J., and Wilson and Norcott, Js.

### *Syllabus*

The defendant appealed from the Superior Court's judgment reversing a decree of the Probate Court and concluding that the plaintiff, rather than the defendant, was the incapacity trustee of a certain trust. The defendant claimed that, because no record had been made of the probate proceedings, the Superior Court was required to conduct a trial de novo of the issue resolved by the Probate Court but had failed to do so. *Held*:

The Superior Court improperly rendered judgment on the merits of the plaintiff's underlying appeal solely on the basis of its review of the papers that had been submitted, as, because no record of the probate proceedings had been made pursuant to statute (§ 45a-186 (d)), the Superior Court was required to have held a trial de novo on the plaintiff's underlying probate appeal, and, thus, the Superior Court's judgment could not stand.

Argued February 17—officially released July 21, 2026

### *Procedural History*

Appeal from the decree of the Probate Court for the district of Cheshire-Southington, concluding, inter alia, that the defendant was the incapacity trustee, brought to the Superior Court in the judicial district of New Britain, where the court, *Hon. Joseph M. Shortall*, judge trial referee, rendered judgment reversing the order of the Probate Court, from which the defendant appealed to this court. *Reversed*; *new trial*.

*Conrad Ost Seifert*, for the appellant (defendant).

*J. Colin Heffernan*, for the appellee (plaintiff).

### *Opinion*

CRADLE, C. J. The defendant, Robert A. Sharp, appeals from the judgment of the Superior Court rendered in favor of the plaintiff, Jean Sharp, reversing the decree of the Probate Court and concluding that the plaintiff, rather than the defendant, was the incapacity trustee of the Eleanor F. Sharp Living Trust (trust).[1] The

---

[1]The plaintiff's complaint in the Superior Court named thirteen additional defendants, who, with the exception of Robert A. Sharp

defendant claims that, because there was no record of the probate proceedings, the Superior Court was required to conduct a trial de novo of the issue resolved by the Probate Court but that it failed to do so.[2] We agree and, accordingly, reverse the judgment of the Superior Court.[3]

The following undisputed facts, as found by the Probate Court, and procedural history are relevant to this appeal. On June 29, 2009, Eleanor F. Sharp (Eleanor) created a living trust of which she was the trustor and the initial trustee. On February 24, 2014, Eleanor executed a restatement of that living trust. On August 26, 2015, Eleanor "executed a designation of . . . [the plaintiff] as cotrustee of the trust." On May 17, 2021, "Eleanor . . . executed [another] restatement of the living trust . . . in which she named herself as the initial trustee. She also named [the defendant] as the incapacity trustee and James C. Sharp III [James] as the successor. The [2021] restatement of the trust further provide[d] that James . . . shall become trustee upon [Eleanor's] death, with [the plaintiff] as the successor death trustee."

On November 24, 2021, the Probate Court appointed Attorney Paul E. Whitaker as conservator of both Eleanor and her estate. Attorney Whitaker filed with the Probate Court a motion to construe the trust documents to determine the identity of the trustee. On March 6, 2023, the Probate Court held a hearing on the motion, and, on April 6, 2023, issued an order concluding that the

and the Law Office of Paul E. Whitaker, did not file an appearance in the Superior Court. On December 13, 2024, the plaintiff withdrew her appeal as to all defendants except for Robert A. Sharp and the Law Office of Paul E. Whitaker. On January 13, 2025, the plaintiff withdrew her complaint as to the Law Office of Paul E. Whitaker. Accordingly, all references to the defendant in this opinion are to Robert A. Sharp only.

[2]General Statutes § 45a-186 (d) provides: "An appeal from a decision rendered in any case after a recording of the proceedings is made under section 17a-498, 17a-543, 17a-543a, 17a-685, or 19a-131b, sections 45a-644 to 45a-667v, inclusive, or section 51-72 or 51-73, shall be on the record and shall not be a trial de novo."

[3]Because this conclusion is dispositive of this appeal, we do not address the defendant's additional claim that the Superior Court violated his due process rights by failing to conduct a trial de novo.

2021 restatement of the trust revoked any prior terms and appointments made in 2014 and 2015, including the plaintiff's appointment as cotrustee. The Probate Court therefore concluded that the defendant was the incapacity trustee and ordered that the trust funds at issue be turned over to the defendant.

On May 4, 2023, the plaintiff filed the underlying probate appeal in the Superior Court pursuant to General Statutes § 45a-186, claiming that "the Probate Court's holdings . . . were in error . . . in that they were . . . [c]learly erroneous in view of the reliable, probative, and substantial evidence on the whole record, and . . . [a]rbitrary or capricious or characterized by an abuse of discretion or clearly unwarranted exercise of discretion." On December 16, 2024, the defendant filed an "objection to the appeal" from the Probate Court's decree, in which he argued, inter alia, that the 2021 restatement of the trust "completely replace[d] the terms and appointments of prior (re)statements of the . . . trust, obviating the need for [the plaintiff] to be notified of removal from her prior appointment as cotrustee."[4] On February 13, 2025, the Superior Court, *Hon. Joseph M. Shortall*, judge trial referee, ordered the plaintiff to "file a memorandum of law in support of her appeal." On March 13, 2025, the plaintiff submitted that requested memorandum of law, in which she argued that "[t]he Probate Court erred in holding that the 2021 trust restatement vitiated the notice requirements of the 2014 trust effectuating the removal of [the plaintiff] without written notice and [its decision therefore] should be reversed." The plaintiff further argued that, "[i]n the present matter, there was no record made of the probate proceedings and as such, the Superior Court should hear the matter de novo, sitting in place of the Probate Court." (Footnote omitted.)

---

[4]The defendant also argued that the plaintiff (1) failed to first submit her claim to the designated trust protector as required by the November 7, 2022 amendment to the trust and (2) "forfeit[ed] both her trust share as well as any eligibility to act in any fiduciary capacity (e.g. trustee)" because, by appealing the Probate Court's order, the plaintiff "contest[ed] the validity of the living trust, which ha[d] been construed by [order] of a competent court."

On March 17, 2025, the defendant filed a caseflow request, in which he requested a "hearing on appeal and objection ASAP." On March 20, 2025, just three days later, the Superior Court, sua sponte, rendered judgment and reversed the order of the Probate Court. The Superior Court concluded, inter alia, that because the plaintiff had never received written notice of her removal, she was never effectively removed as either cotrustee or incapacity trustee and therefore the plaintiff, and not the defendant, was the incapacity trustee until Eleanor's death on September 11, 2024. This appeal followed.

It is well settled that when, as here, no record was made of the probate proceedings, the Superior Court shall conduct a trial de novo on appeal. See, e.g., *Barash* v. *Lembo*, 348 Conn. 264, 278 n.8, 303 A.3d 577 (2023); *Andrews* v. *Gorby*, 237 Conn. 12, 14–16, 675 A.2d 449 (1996); *Wolfel* v. *Wolfel*, 218 Conn. App. 760, 767, 292 A.3d 1261, cert. denied, 348 Conn. 902, 301 A.3d 528 (2023). Our Supreme Court recently has explained that "[t]he right to appeal from an order, denial or decree of a probate court is purely statutory. . . . Any person aggrieved by an order or decree of a probate court may challenge that order or decree by appealing to the Superior Court. General Statutes § 45a-186 (b). A probate appeal is commenced by filing in the Superior Court a complaint stating the reasons for the appeal. General Statutes § 45a-186 (c). . . . In the Superior Court 'the appellant shall file reasons of appeal, which upon motion shall be made reasonably specific, within ten days after the return day; *and pleadings shall thereafter follow in analogy to civil actions*.' Practice Book § 10-76 (a).

"When . . . no record was made of the probate proceedings, *a probate appeal is not so much an appeal as a trial de novo* . . . .[5] The Superior Court sits as a probate court

---

[5]"An appeal from a decree rendered after a recording of the proceedings is made, however, 'shall be on the record and shall not be a trial de novo.' General Statutes § 45a-186 (d). In 'on the record' probate appeals, 'the Superior Court shall not substitute its judgment for that of the Probate Court as to the weight of the evidence on questions of fact. The Superior Court shall affirm the decision of the Probate Court unless

and takes jurisdiction of the order or decree appealed from and [*tries*] *that issue de novo*. . . . It must decide the appeal as an original proposition unfettered by, and ignoring, the result reached in the [P]robate [C]ourt. . . . *At the trial de novo, the parties are entitled to a full hearing with all the judicial safeguards inherent in a full court proceeding . . .* and the Superior Court may receive evidence that could have been offered in the Probate Court, whether or not it actually was offered." **(**Citations omitted; emphasis added; footnote in original; internal quotation marks omitted.**)** *Rutherford* v. *Slagle*, 352 Conn. 27, 34–35, 334 A.3d 988 **(**2025**)**.

"In an appeal from probate . . . the informalities of the probate proceeding are corrected *by permitting a full hearing* in which new evidence may be submitted." **(**Emphasis added; internal quotation marks omitted.**)** Id., 49. "The [Probate Court's] order remains intact until modified by a judgment of the Superior Court *after a hearing de novo* on the issues presented for review by the reasons of appeal." **(**Emphasis added; internal quotation marks omitted.**)** *In re Probate Appeal of McIntyre*, 207 Conn. App. 433, 440, 263 A.3d 925 **(**2021**)**. "Whoever bore the burden of proof in the Probate Court has the same burden in the trial de novo." *Rutherford* v. *Slagle*, supra, 352 Conn. 52.

In the present case, there is no dispute that no record was made of the probate proceedings and, therefore, that the Superior Court was required to conduct a trial de novo. Moreover, the plaintiff concedes, and the record confirms, that, "[i]n deciding the probate appeal on the merits, the court relied solely upon the filings in the file and did not conduct an on-the-record evidentiary

---

the Superior Court finds that . . . the findings, inferences, conclusions or decisions are: **(1)** In violation of the federal or state constitution or the general statutes, **(2)** in excess of the statutory authority of the Probate Court, **(3)** made on unlawful procedure, **(4)** affected by other error of law, **(5)** clearly erroneous in view of the reliable, probative and substantial evidence on the whole record, or **(6)** arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. . . .' General Statutes § 45a-186b." *Rutherford* v. *Slagle*, 352 Conn. 727, 34–35 n.7, 334 A.3d 988 **(**2025**)**.

hearing." Although it is clear from the Superior Court's memorandum of decision that it reviewed the Probate Court's conclusions de novo, the Superior Court did not conduct a *trial* de novo.[6] No trial ever took place. Instead, the Superior Court, sua sponte, rendered judgment on the merits of the plaintiff's underlying appeal solely on the basis of its review of the papers that had been submitted, which included the plaintiff's complaint, the defendant's "objection to [the] appeal," and the plaintiff's memorandum of law in support of her complaint, as well as the attached exhibits.[7] The Superior Court never held a hearing at which the parties were afforded the opportunity to present argument or evidence addressing the merits of the plaintiff's underlying appeal prior to the entry of judgment.[8] Because the Superior Court was required to

[6]Insofar as the plaintiff contends that the Superior Court's obligation to conduct a trial de novo required *only* that it decide the appeal as an original proposition, the plaintiff misunderstands the distinction between appellate de novo review and a trial de novo. See, e.g., *Wolfel* v. *Wolfel*, supra, 218 Conn. App. 768 ("The plaintiffs' argument . . . reflects a misunderstanding of the distinction between a trial de novo and appellate de novo review. . . . [T]he Superior Court does not sit as an appeals court that determines the correctness of the decree of the Probate Court."). In appellate de novo review, the court conducts an independent, nondeferential reexamination of another tribunal's factual findings and legal conclusions on the basis of the record. In a trial de novo, however, it is a complete retrial of the case in a different court as if there had been no trial in the first instance.

[7]The attached exhibits included copies of the Probate Court's order, the 2014 restatement of the trust, and the 2021 restatement of the trust. In addition, the plaintiff provided the Superior Court with several of the trust's account statements, a photocopy of Eleanor's revocation of power of attorney for the defendant and James, and emails from the defendant and James dated after the Probate Court's order. The defendant also attached exhibits concerning his moving the situs of the trust to Florida and the appointment of a "Trust Protector."

[8]The plaintiff contends that there was no need to conduct a hearing because, "[i]n light of the undisputed validity of the various trust documents, and those documents being presented to the [Superior] [C]ourt, there was simply no evidence or testimony to be presented at an evidentiary hearing." This argument, however, directly contradicts the plaintiff's assertion in her complaint filed with the Superior Court that, at the March 6, 2023 hearing before the Probate Court, "James . . . [the defendant] and [the plaintiff] all presented arguments *and evidence relating to their interpretations of various trust documents*

hold a trial de novo on the plaintiff's underlying probate appeal and failed to do so, its judgment cannot stand.[9]

The judgment is reversed and the case is remanded to the Superior Court for a trial de novo.

In this opinion the other judges concurred.

---

that had been executed by Eleanor . . . *and what impact the language of those documents had as to the issue of whom the appropriate trustee of the trusts* created by Eleanor [were] . . . ." (Emphasis added.) Moreover, in so arguing, the plaintiff ignores our Supreme Court's clear direction that, "[a]t the trial de novo [of a Probate Court order], the parties are entitled to a full hearing with all the judicial safeguards inherent in a full court proceeding." (Internal quotation marks omitted.) *Rutherford* v. *Slagle*, supra, 352 Conn. 35.

[9]The plaintiff contends that, even if we agree that the Superior Court improperly failed to conduct a trial de novo, the defendant has failed to show that he was harmed by the Superior Court's error. See, e.g., *Tevolini* v. *Tevolini*, 66 Conn. App. 16, 30–31, 783 A.2d 1157 (2001) ("The [defendant] is entitled to relief from the trial court's improper rulings only if one or more of those rulings were harmful. . . . To meet this burden in a civil case, the [defendant] must show that the ruling would likely affect the result." (Citations omitted; internal quotation marks omitted.)) Even if we assume, arguendo, that harmless error analysis would apply to the present case, we cannot conclude that the Superior Court's error was harmless. Because there is no record of the Probate Court proceedings other than its order, and because the Superior Court failed to conduct a trial de novo, we cannot ascertain whether there might be admissible evidence or testimony that support the defendant's proffered construction of the trust and whether such evidence could have affected the Superior Court's ultimate decision. Indeed, the plaintiff's assertion before the Superior Court that such evidence was presented before the Probate Court; see footnote 8 of this opinion; as well as the differing conclusions of the Probate Court, which held a hearing, and the Superior Court, which did not, suggest that could be the case. Moreover, by failing to conduct a trial de novo, or even a hearing, the Superior Court did not provide the defendant with an opportunity to be heard. The defendant therefore was prevented from effectively presenting such evidence or argument and, resultantly, from participating fully in the underlying appeal. Accordingly, we cannot say that the Superior Court's error was harmless. See, e.g., *In re Hyrum D.*, 230 Conn. App. 91, 105–106, 328 A.3d 762 (2025) (trial court's failure to conduct required evidentiary hearing prior to sua sponte rendering judgment and revoking children's commitment was not harmless error where court held truncated evidentiary hearing which prevented petitioner from participating fully in underlying proceedings).